IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHEVELLE TINGEN,<br>　　　　Plaintiff<br><br>　　　　vs.<br><br>ROBERT L. ECKLIN, JR.,<br>Individually and doing business as<br>ECKLIN DEVELOPMENT GROUP and<br>DENNIS SCHOPF,<br>　　　　Defendants | :<br>:<br>:　CIVIL ACTION No. 02-4663<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**DEFENDANTS' BRIEF IN OPPOSITION
TO PLAINTIFF'S CERTIFICATE OF COUNSEL**

Defendants Robert L. Ecklin, Jr., Ecklin Group and Dennis Schopf ("Defendants") hereby respond to Plaintiff's submission of "Certificate of Counsel with Documents." It is presumed that Plaintiff intended the Certificate of Counsel to be a Motion to Compel. The Certificate of Counsel submitted by Plaintiff is not in accordance with Local Rule 7.1, which requires a brief in support and a proposed order, but, instead, is filled with conclusory statements. In fact, Plaintiff's "Certificate" cites to only one case to support any of her positions.

　　　　Plaintiff's Certificate addresses five specific areas of discovery. First, it requests documents establishing the financial worth of Defendants. This type of information, at this time, is clearly premature for Defendant Ecklin Group.[1] In this case, Plaintiff has made a claim for punitive damages. Punitive damages can be awarded under certain circumstances in employment discrimination cases, but only where the conduct is sufficiently egregious. *See Jackson and Coker, Inc. v. Lynam*, 840 F. Supp. 1040, 1051 (E.D. Pa. 1993).

---

[1]　As discussed below, the financial worth of individual Defendants Ecklin and Schopf should never become relevant in this case.

While evidence of Defendant Ecklin Group's net worth may be relevant to Plaintiff's punitive damages claim, *see Jackson and Coker Inc. v. Lynam*, *supra*, (*quoting Martin v. Johns-Manville Corp.*, 494 A.2d 1088, 1096 (Pa. 1985)), *aff'd without opinion*, 31 F.3d 1172 (3d Cir. 1994), such evidence is neither relevant nor material to Plaintiff's burdens of proof of the discrimination claims generally, and such evidence is inadmissible before the Court has determined the legal sufficiency of Plaintiff's punitive damages claim. *See Williams v. Betz Laboratories, Inc.*, 1996 U.S. Dist. LEXIS 3045, *8-10 (E.D. Pa. 1996); *accord Rosen v. Tabby*, 1996 U.S. Dist. LEXIS 16242, *3 (E.D. Pa. Oct. 30, 1996).

In addition, if Plaintiff is allowed to make reference to the size and/or net worth of Defendant Ecklin Group before the Court determines whether Plaintiff's claim for punitive damages is legally sufficient, Defendants will be irreversibly prejudiced. *See Williams*, 1996 U.S. Dist. Lexis 3045, at **9-10. This evidence may lead the jury to conduct an improper legal analysis, ignoring the facts that Plaintiff must prove and assigning liability based on Defendants' perceived ability to pay an award of damages. Because evidence of Defendants' size and worth is irrelevant and immaterial to Plaintiff's discrimination claims, such evidence should not be considered in this matter before the Court has determined the legal sufficiency of Plaintiff's claim for punitive damages. *See* Fed. R. Evid. 401, 402.

Another reason that disclosure of financial worth is premature at this stage in the case is that Defendants plan to file a motion for summary judgment on the Title VII issue and have revealed that fact to Plaintiff. The only claim against Defendants which can have an award of punitive damages is the Title VII cause of action. If the Title VII cause of action is dismissed from the case, the financial worth is not relevant inasmuch as punitive damages are not available. Finally, even after the summary judgment is decided, it would be premature to order revelation of financial worth. It is not until the Plaintiff establishes that punitive damages are at issue in the

2

case (i.e., at the earliest at the time of pretrial memorandum submission and at the latest, after her case in chief) should the financial information be revealed. *See Van Horn v. Elbeco Incorporated, et al*, 1995 U.S. Dist. LEXIS 17389, at *8 (E.D. Pa. 1995) ("In light of the public policy disfavoring discovery of tax returns and the minimal relevance of such information to the issue in this action, plaintiff's request for defendant's tax returns will be denied at this juncture, subject to reconsideration if it is later established that punitive damages are at issue in this case and plaintiff cannot otherwise demonstrate defendant's financial condition.").

Mr. Ecklin's wealth and/or the wealth of businesses other than Ecklin Development Group are not relevant to this matter. First, the personal wealth of individual Defendant Ecklin is in no way relevant to Plaintiffs' claims. Therefore, her subpoena and discovery request for his personal tax returns are not relevant to this matter, nor likely to lead to the discovery of admissible evidence. Case law supports the non-disclosure of this information, especially at this early stage. First of all, public policy favors the non-disclosure of income tax returns. *Sherif v. AstraZeneca, L.P.*, 2001 U.S. Dist. LEXIS 6453, at *5 (E.D. Pa. 2001) (citations omitted). As provided by the Eastern District in the *Sherif* case:

> An individual's privacy interest in his tax returns must be balanced with a number of factors, including the opposing party's need for the information, its materiality, and its relevance. Whether tax returns are discoverable is determined by a two-part balancing test: (1) the returns must be relevant to the subject matter of the action; and (2) there must be a compelling need for the returns because the information contained therein is not otherwise readily obtainable. The burden of establishing relevance is on the party seeking discovery; the party resisting disclosure bears the burden of establishing alternative sources for the information.

*Id.* at *5-6. While Mr. Ecklin may be a Party, he cannot be a Party to the Title VII action, as there is no individual liability under Title VII. *Sheridan v. E.I. DuPont, DeNemours and Company*, 100 F.3d, 1061 (ed. Cir. 1996). Therefore, he cannot be a Party to the action which may entitle the Plaintiff to punitive damages.

3

Next, the Certificate requests financial records, including payroll, not only of the Defendants, but of numerous other entities. The documents were described in an attachment to a Subpoena served upon the accountant, Sager, Swisher & Company, of Defendant Ecklin. The accountants did provide the verified information as it relates to the Ecklin Group. The records of the other entities including Details (a retail store), Pappagallo (a retail clothing store), Stoner, Inc. (totally independent manufacturing facility), as well as other entities is not relevant to the litigation against the Defendants, nor is it likely to lead to the discovery of admissible evidence. In support of their position, Defendants offer the Declaration of Robert L. Ecklin, Jr., attached hereto as Exhibit A.

Furthermore, Plaintiff had the opportunity to explore the relationship between Ecklin Group, Robert Ecklin and the other entities identified in the Subpoena served on the accountant. In her deposition of Robert Ecklin on May 23, 2003, Plaintiff's counsel, in fact, began to explore those relationships as follows:

> A: Stoner Incorporated.
>
> Q: For the record, what is exactly Stoner, Inc.
>
> A: Stoner, Inc. is a manufacturing company located in Quarryville, Pennsylvania.
>
> Q: They have been in existence how long?
>
> A: Since the - - sometime in the 1940s.
>
> ***
>
> Q: And what do they manufacture.
>
> A: They manufacture lubricants for industrial uses.
>
> Q: What is the exact address for them?
>
> A: 1070 Robert Fulton Highway, Quarryville, Pennsylvania 17566.

(Ecklin Deposition at p. 14)

> A: It is a partnership called Stoner Estates.
>
> Q: And who is that in partnership with?
>
> A: That is in partnership with myself and my two parents.
>
> Q: And their names?
>
> A: Robert L. Ecklin and Loretta S. Ecklin.
>
> ***
>
> Q: How many employees of Stoner Estates?
>
> A: None. There are none.
>
> Q: No one oversees the building as far as janitorial and maintenance, any of that?
>
> A: That is done out of our Ecklin Group employees.

(Ecklin Dep. at p. 61-62).

> Q: Are you also an owner of Details or is that your wife?
>
> A: That is my wife.
>
> Q: Is she an employee of Ecklin?
>
> A: No.

(Ecklin Dep. at p. 114-115). Although Plaintiff had the alleged Ecklin Group "letterhead" document in front of her during Mr. Ecklin's deposition, she did not ask him any questions about the other listed entities.

Furthermore, she knew the identity of the accountant for the entities, as is evidenced below:

> Q: And who is the accountant for Ecklin Group?
>
> A: Sager and Swisher, LLP.

(Ecklin Dep. at p. 29).

> Q: And who is the accountant for [Stoner, Inc.].
>
> A: Sager and Swisher, LLP.

5

(Ecklin Dep. at p. 15).

Instead of issuing a subpoena for the deposition of the accountant to explore further, she merely asked for the financial records and tax returns of the entities.[2]

Third, the Motion requests that Ruth Ecklin, a non-party witness, be deposed. Had Ms. Ecklin been properly served within the discovery time limits set by this Court, it is presumed that she would have attended a deposition. Defendants' counsel twice showed up for the deposition at Plaintiff counsel's office. The first time, July 18, 2003, it was determined that Ms. Ecklin was never actually served with a Subpoena. Defendants' counsel then attended the next business day, July 21, 2003 (the last day for discovery) after Plaintiff's counsel served the Subpoena on Defendant Ecklin one business day before Ms. Ecklin was commanded to appear. Plaintiff cites the one case in her Certificate from the Eastern District of New York allegedly for the proposition that one business day notice is sufficient for a deposition.[3]

Defendants have moved to quash the Subpoena of Ms. Ecklin and incorporate by reference their Motion to Quash in this response to Plaintiff's Certificate.[4] In the Certificate, Plaintiff's only justification for her request for an extension of the discovery time limit in order to depose Ruth Ecklin is because "Ruth Ecklin is an agent for defendant Ecklin Group." She does not in any way explain this conclusory allegation. Ms. Ecklin's status as a part owner of the Griest Building, a building which is operated by the Ecklin Group, does not mean that she is an

---

[2] The tax returns will not show the number of employees of each entity in any event.

[3] Actually, the case is easily distinguishable from the case at bar. The case cited involved a request for a mandatory preliminary injunction, "the parties were on an expedited discovery schedule, the need for [the] deposition was sudden and unexpected…" *Natural Organics, Inc. v. Proteins Plus, Inc.*, 724 F. Supp. 50, 52 n.3 (E.D.N.Y. 1989). Conversely, this case had a discovery timeline of over one year from the time the Complaint was filed until the deadline set by this Court. Ms. Ecklin was named on the deed of the Griest Building the entire time.

[4] Plaintiff's counsel evidently ignores the Federal Rules of Civil Procedure when making her argument that since "defense counsel" do not represent Ruth Ecklin, "they do not have authority nor standing to contest the subpoena." Certainly as a Party to the action, Defendant has standing to object to a subpoena which bears their name in the caption of the subpoena. Specifically, Fed. R. Civ. P 45(c)(3)(A) does not restrict who may file a "timely motion…[to] quash or modify the subpoena."

agent for the Ecklin Group. Otherwise, any commercial property owner could be considered an agent of the entity that manages the property. This is nonsensical.

Fourth, Plaintiff requests an "employee printout" of Defendant Schopf for years 2001 and 2002. The unredacted documents from 1995 through 2000 were produced, which is the relevant time period for Plaintiff's claims. Plaintiff resigned from her employment on July 19, 2000, the relevant time period for claim of discrimination is 1996 through 2000. Plaintiff makes a point to say that the 1995-2000 records were produced. However, those records were produced by previous counsel to the Pennsylvania Human Relations Commission, not part of this Federal Court action. Just because previous counsel provided them to the Pennsylvania Human Relations Commission does not waive Defendants' right to argue their irrelevance in the Federal Court action.

Finally, Plaintiff requests that the information redacted from Defendant Schopf's performance evaluation for years 2001 and 2002 be "unredacted." The redacted portions of the performance evaluation is the compensation paid to defendant Schopf. His salary is not relevant to Plaintiff's claims of discrimination in this case.

In summary, Plaintiff's Certificate of Counsel should be denied in all respects.

                                              STEVENS & LEE

Dated: August 1, 2003                  By: _____
                                                Gary D. Melchionni
                                                Joseph D. Shelby
                                                25 N. Queen Street
                                                Suite 602
                                                Lancaster, PA  17603
                                                (717) 291-1031

                                                Attorneys for Defendants Robert L. Ecklin, Jr.,
                                                Ecklin Development Group and Dennis Schopf

## **CERTIFICATE OF SERVICE**

      I, JOSEPH D. SHELBY, ESQUIRE, certify that on this date, I served a true and correct copy of the foregoing Defendants' Brief In Opposition To Plaintiff's Motion To Compel upon the Plaintiff's attorney, via hand delivery at the following address:

>Nina B. Shapiro, Esquire
>53 North Duke Street
>Suite 201
>Lancaster, PA  17602

 

_____
Joseph D. Shelby

Dated:  August 1, 2003

Case 2:02-cv-04663-JKG  Document 18  Filed 08/04/2003  Page 9 of 9